Gerry P. Fagan
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P. O. Box 2559
Billings, Montana 59103-2559
Telephone: (406) 248-7731
Fax: (406) 248-7889
Gerry.Fagan@moultonbellingham.com

Attorneys for Defendants Pantaenius America Limited, AGCS Marine Insurance Company, Liberty Mutual Insurance Company, and Torus Insurance Company

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| GALILEA, LLC, and TAUNIA KITTLER,<br><br>Plaintiffs,<br><br>-vs-<br><br>PANTAENIUS AMERICA LIMITED, ANDREA M. GIACOMAZZA, AGCS MARINE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, and TORUS INSURANCE COMPANY,<br><br>Defendants. | Case 2:18-cv-00037-SEH<br><br><br>**INSURER DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO CHANGE VENUE TO BILLINGS DIVISION, AND OPPOSED MOTIONS TO DISMISS, COMPEL ARBITRATION, AND/OR STAY THE ACTION** |

## **TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES ........................................................................iii

PRELIMINARY STATEMENT ...................................................................1

PARTIES ..................................................................................................3

JURISDICTION.........................................................................................4

PROCEDURAL HISTORY .........................................................................4

FACTUAL BACKGROUND ........................................................................8

    A.    Complaint ....................................................................8

    B.    Relationship Between the Parties ...............................8

        (i)    2014: Galilea, LLC's Broker Contacts Pantaenius ..........8

        (ii)    2015: Galilea, LLC Contacts Pantaenius
             Without a Broker...............................................9

LEGAL ARGUMENT.................................................................................16

POINT I:    AS THE BUTTE DIVISION IS AN IMPROPER VENUE,
           DEFENDANTS MAKE AN UNOPPOSED REQUEST TO
           TRANSFER TO THE BILLINGS DIVISION ...........................16

POINT II:   PLAINTIFFS SHOULD BE COMPELLED TO
           ARBITRATE DISPUTES BEFORE THE
           AAA IN NEW YORK ...............................................................19

i

POINT III:  PLAINTIFFS' CLAIMS
            SHOULD BE DISMISSED ...................................................... 22

     A.   Mrs. Kittler's Claims Should Be Dismissed ............................ 22

     B.   Governing Law ....................................................................... 23

     C.   Counts VIII through XIV Should Be Dismissed ....................... 24


POINT IV:  ALTERNATIVELY, THE ACTION SHOULD BE STAYED
           PENDING THE OUTCOME OF THE AAA ARBITRATION
           IN WHICH GALILEA, LLC AND CHRIS KITTLER
           CLAIM THE SAME ALLEGED DAMAGES ............................. 28

CONCLUSION ........................................................................................... 29

MOULTON BELLINGHAM PC
Attorneys at Law

# TABLE OF AUTHORITIES

**Case Law**                                                    **Page No.**

Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,
  571 U.S. 49, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013) ..........................21

Batas v. Prudential Ins. Co. of Am.,
  281 A.D.2d 260 (1st Dep't 2001)............................................................25

Celle v. Barclays Bank P.L.C.,
  48 A.D.3d 301 (1st Dep't 2008)..............................................................24

City of New York v. 611 W. 152nd St., Inc.,
  273 A.D.2d 125 (1st Dep't 2000)............................................................25

Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.,
  70 N.Y.2d 382 (1987)..............................................................................26

Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,
  9 F.3d 1060 (2d Cir.1993) ......................................................................20

Fortino v. Hersh,
  307 A.D.2d 899, 764 N.Y.S.2d 25 (1st Dep't 2003)................................25

Galilea, LLC v. AGCS Marine Ins. Co.,
  et al., 879 F.3d 1052 (9th Cir. 2018).................................................passim

Galilea, LLC v. AGCS Marine Ins. Co.,
  No. CV 15-84-BLG-SPW, 2016 WL 754221
  (D. Mont. Feb. 24, 2016).........................................................5, 7, 10, 20

Guerrero v. W. 23rd St. Realty, LLC,
  45 A.D.3d 403, 404 (1st Dep't 2007)......................................................25

iii

IMG Int'l Mktg. Grp., Inc. v. SDS William St., LLC,
 32 Misc. 3d 1233(A) (Sup. Ct. N.Y. Co. 2011)..........................................24

Katz v. Am. Mayflower Life Ins. Co. of New York,
 14 A.D.3d 195, 788 N.Y.S.2d 15 (2004)............................................24, 26

Kelly v. Porter, Inc.,
 687 F. Supp. 2d 632 (E.D. La. 2010)........................................................22

Metro Missions, Inc. v. US 1 Holdings,
 35 Misc. 3d 1229(A), 954 N.Y.S.2d 760 (Sup. Ct. 2012) ........................25

NYU Hosps. Ctr. v. Huang, No. 102832-2011, 2012 WL 251551
 (Sup. Ct. N.Y. Co. Jan. 18, 2012)..............................................................25

Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.,
 51 F. Supp. 3d 379 (S.D.N.Y. 2014)..........................................................26

Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy,
 449 F. App'x 57 (2d Cir. 2011) ..................................................................27

Robare v. Fortune Brands, Inc.,
 39 A.D.3d 1045 (3d Dep't 2007)................................................................25

Rule v. Burlington N. & Santa Fe Ry. Co.,
 ¶ 24, 2005 MT 6, 325 Mont. 329, 106 P.3d 5339 ..............................18, 19

Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas,
 509 F. App'x 54 (2d Cir. 2013) ..................................................................26

World Omni Fin. Corp. v. Ace Capital Re Inc.,
 64 F. App'x 809 (2d Cir. 2003) ..................................................................21

**Statutes**

9 U.S.C. § 3 .......................................................................................2, 22
9 U.S.C. § 4 .............................................................................................19
9 U.S.C. §§ 1-16 ...................................................................................2, 19

iv

28 U.S.C. § 1333(1) ....................................................................... 4

28 U.S.C. § 1404 ......................................................................... 19

28 U.S.C. § 1406(a) ..................................................................... 16

Mont. Code Ann. § 25-2-118(1) ..................................................... 17

Mont. Code Ann. § 25-2-118(2) ................................................ 17, 18

Mont. Code Ann. § 25-2-121(1)(b) or (2)....................................... 17

Mont. Code Ann. § 25-2-121(2)(c) ........................................... 17, 18

Mont. Code Ann. § 25-2-122............................................... ....2, 17

Mont. Code Ann. § 27-2-203 ........................................................ 27

Mont. Code Ann. § 27-8-201 ........................................................ 23

Nev. Rev. Stat. Ann. § 86.281 (West) ........................................... 22

Nev. Rev. Stat. Ann. § 86.311 (West) ........................................... 22

## Rules

Fed. R. Civ. P. 12(b)(1).......................................................... 2, 22

Fed. R. Civ. P. 12(b)(3).............................................................. 16

Fed. R. Civ. P. 12(b)(6).............................................................. 22

Fed. R. Civ. P. 17 ................................................................. 2, 22

## Other Authorities

L.R. 1 ....................................................................................... 18

L.R. 3 .................................................................................. 2, 16

## PRELIMINARY STATEMENT

This is the latest installment in a long-running coverage dispute concerning the grounding of the 60-foot yacht GALILEA, owned by Nevada limited liability company Galilea, LLC, off the coast of Panama, far outside the navigational limits of coverage under the policy of insurance ("Policy") which specifies a "Cruising Area" near San Diego, California. There can be no doubt the policy underwriters are entitled to the relief requested in their demand dated August 4, 2015, for arbitration in New York pursuant to the rules of the American Arbitration Association ("AAA"): a declaration of rights stating that there is no coverage under the Policy for the grounding.

The dispute arising out of the grounding of the GALILEA has already been before Hon. Susan P. Watters, District Judge in the Billings Division, in case number 1:15-cv-00084-SPW, and also the Court of Appeals for the Ninth Circuit, in case numbers 16-35474 and 16-35475. The Ninth Circuit issued its Opinion on January 16, 2018, and the District of Montana issued an Order dated February 9, 2018, granting the underwriters' motion to compel arbitration in its entirety and dismissing the case. See Galilea, LLC v. AGCS Marine Ins. Co., et al., 879 F.3d 1052 (9th Cir. 2018). This new case is nothing more than an attempt to make an end-run around the order compelling arbitration and get another bite at the apple.

1

Defendants respectfully request a change of venue to the Billings Division.  As explained below, under Local Rule 3.2(b), a change of venue to the Billings Division is appropriate as it contains the only county that is a proper venue for this action.  This motion is brought pursuant to L.R. 3.2(c) and Mont. Code Ann. § 25-2-122 in Defendants' first appearance.

While it seems the action should be transferred to the Billings Division before any other orders are issued, Defendants are obligated to assert certain defenses in this first motion in response to the complaint.

Defendants request that the Court issue an order: (a) compelling Plaintiffs to bring their disputes to arbitration in New York under AAA Commercial Arbitration Rules pursuant to the agreements to arbitrate set forth in the Policy and the Application for Yacht Insurance, the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and the doctrine of *forum non conveniens*; and (b) dismissing this action or alternatively staying it pursuant to 9 U.S.C. § 3.

If the Court does not grant Defendants' request to compel arbitration in its entirety, Defendants ask the Court to dismiss, with prejudice, Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 17 and 12(b)(1) and (6).  If the Court does not dismiss all of Plaintiffs' claims, Defendants request that the Court stay this action pending the outcome of

the AAA arbitration that was commenced in August, 2015.  At the request of Galilea, LLC, that proceeding was stayed by Judge Watters from September 29, 2015, until the order compelling arbitration was issued on February 9, 2018.  Subsequently, the arbitrators were appointed and held the first conference with counsel for the parties on August 15, 2018.  Hearings are scheduled for December 12-14, 2018. (Eisenhower Decl. ¶ 6.)  The long-stayed arbitration proceeding should be completed before this new action proceeds, particularly as the outcome of the arbitration could render moot the claims being brought in this new action which allege the same "damages in excess of $1,566,500."

## **PARTIES**

AGCS Marine Insurance Company, Liberty Mutual Insurance Company and Torus National Insurance Company are the interested underwriters (collectively referred to in the complaint as the "Insurer Defendants") who issued a marine insurance policy to Plaintiff, Galilea, LLC, which is allegedly a single-purpose Nevada limited liability company formed by sole members Chris and Taunia Kittler to own a 60-foot sailing yacht, GALILEA.  See Compl. ¶ 1.  As of September 3, 2015, and January 14, 2016, no Montana address for Galilea, LLC, Mr. Kittler, or Mrs. Kittler

3

appeared in the Nevada Secretary of State's records for Galilea, LLC. (Fagan Exhibits 2-3.)

Pursuant to Clause A1 of the Policy, Pantaenius America Limited ("Pantaenius") "is the Agent for the Insurance Company as indicated in this policy." (Wiener Exhibit 1.) Accordingly, Pantaenius acted as the agent for disclosed principals, the three Insurer Defendants named herein. At all relevant times, Andrea M. Giacomazza[1] was an employee of Pantaenius.

## JURISDICTION

This Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1). In the previous action, Galilea, LLC asserted diversity jurisdiction. The District of Montana found admiralty jurisdiction and the Ninth Circuit affirmed, stating, "Galilea's maritime insurance policy is within federal admiralty jurisdiction and governed by applicable maritime law if such law exists." Galilea, LLC v. AGCS Marine Ins. Co., et al., 879 F.3d 1052, 1059 (9th Cir. 2018).

## PROCEDURAL HISTORY

On August 4, 2015, the Insurer Defendants commenced arbitration proceedings before the AAA in New York by demanding arbitration in accordance with its Commercial Arbitration Rules.

---

[1] Plaintiffs have not served Ms. Giacomazza.

On August 28, 2015, Galilea, LLC filed an action against the Insurer Defendants in the District of Montana, case number 1:15-cv-00084-SPW, wherein it asserted that the dispute was not arbitrable, in that the arbitration clause was either not agreed to or otherwise enforceable under Montana law.  The Court disagreed and issued an Opinion and Order dated February 24, 2016, in which the Court concluded that:

> The arbitration provision is valid and enforceable under the FAA. The Court does not find any legal grounds to revoke the contract.

Galilea, LLC v. AGCS Marine Ins. Co., No. CV 15-84-BLG-SPW, 2016 WL 754221, at *6 (D. Mont. Feb. 24, 2016).  The Ninth Circuit affirmed. Galilea, LLC v. AGCS Marine Ins. Co., et al., 879 F.3d 1052, 1062 (9th Cir. 2018).

The District Court also found that the dispute has virtually no connection to Montana:

> Galilea, LLC contracted with the Insurers while out at sea. Montana's only connection to the transaction is that Galilea, LLC's only members -- the Kittlers -- are Montana citizens. Montana's interest is not greater than the federal interest in interpreting this particular marine policy.

Galilea, LLC v. AGCS, 2016 WL 754221, at *4.  The Ninth Circuit affirmed, stating:

> Montana does not have a materially greater interest than federal maritime (or New York) law.  There is no question that Montana

5

> law has relatively little to do with this dispute. Galilea is a Nevada
> limited liability corporation, and the Insurers have principal
> places of business or are incorporated under the laws of
> Delaware, New Jersey, Illinois, and Massachusetts. Although
> Galilea's members are Montana residents, they were in Florida,
> Puerto Rico, and the Caribbean Sea at the time of contracting,
> and the insured property appears never to have been in
> Montana. Moreover, landlocked Montana has relatively weak
> interests in maritime insurance law, particularly as compared to
> coastal states with more developed maritime law, including New
> York.

Galilea, LLC v. AGCS, 879 F.3d at 1059.

The Ninth Circuit determined that the arbitration agreement shows a

clear and unmistakable intent to resolve arbitrability questions in arbitration,

and ruled that the district court must grant underwriters' motion to compel

arbitration in its entirety.  The Ninth Circuit found that Galilea, LLC and the

Kittlers are sophisticated parties:

> Both parties here are sophisticated with respect to contracting for
> insurance policies. The Underwriters are, obviously,
> sophisticated parties; they underwrite maritime insurance
> policies. But so are Galilea and the Kittlers.  Although they are
> Montana residents, Taunia and Chris Kittler formed a limited
> liability company under Nevada law to own and maintain a yacht
> worth more than a million dollars. In addition, Chris Kittler owns
> and operates a financial services company, also incorporated
> under Nevada law.  In light of Galilea's and the Underwriters'
> sophistication, the agreement to arbitrate according to AAA rules
> is sufficient to show clear and unmistakable intent to resolve
> arbitrability questions in arbitration, rather than federal court. The
> district court therefore erred by declining to send those questions

to arbitration and instead construing the scope of the parties' arbitration agreement itself.

Galilea, LLC v. AGCS, 879 F.3d at 1062.

In response to the Ninth Circuit's mandate, the District of Montana entered an order dated February 9, 2018, amending its prior order to grant the Insurer Defendants' motion to compel arbitration in its entirety and dismissing the case.  The District Court had previously stayed the AAA arbitration proceedings since its order dated September 29, 2015, and maintained the stay pending a decision by the Ninth Circuit.  Galilea, LLC v. AGCS, 2016 WL 1328920, at *7 (D. Mont. Apr. 5, 2016).

After the District Court entered the order compelling arbitration, the arbitrators were appointed.  (Eisenhower Decl. ¶ 5.)  On April 23, 2018, for the first time, Mr. Chris Kittler purported to personally assert claims against the Insurer Defendants in the arbitration.  (Eisenhower Decl. ¶ 4, Exhibit 1.)  On August 20, 2018, over the objections of the Insurer Defendants, Mr. Kittler was permitted to join the arbitration as a party.  (Eisenhower Decl. ¶ 7.)  Clearly, Mr. Kittler concedes that his purported claims against the Insurer Defendants must be brought before the arbitrators.  The arbitrators held the first conference with counsel for the parties on August 15, 2018,

and hearings are scheduled for December 12-14, 2018.  (Eisenhower Decl. ¶ 6.)

## FACTUAL BACKGROUND

**A.**    **Complaint**

Plaintiffs' Complaint alleges failure to properly procure insurance and wrongful denial of coverage for the grounding of GALILEA, a yacht owned by Galilea, LLC, off the coast of Panama in 2015.  See Complaint ¶¶ 1, 11. Galilea, LLC's claim was denied as the grounding occurred far outside the "Navigational Limits" of coverage under paragraph A2(d) the Policy.  Id. at ¶ 38.  The complaint is based on the inaccurate characterization that Pantaenius and Ms. Giacomazza were acting as Plaintiffs' insurance broker, and contains a mixture of contract and tort claims.

**B.**    **Relationship Between the Parties**

**(i)**    **2014: Galilea, LLC's Broker Contacts Pantaenius**

On May 6, 2014, about a year before Galilea, LLC requested the Policy at issue, Pantaenius supplied a "Quotation for Yacht Insurance" for the yacht GALILEA to Galilea, LLC's broker, W.R.Hodgens Marine Insurance Inc.  The quotation included a "Premium Estimate" of $12,972.50 for the following designated Cruising Area:

**Cruising Area:**

Canadian and United States Atlantic coast and inland waters, Caribbean Sea, and Gulf of Mexico, north to 52º North Latitude, east to 50º West Longitude, and south to 7º North Latitude. Waters of Cuba, Haiti, Venezuela, and the Panama Canal are excluded.

(Fagan Exhibit 4, ER84 ¶ 5, ER92-96.)  This quotation contains similar provisions but a more expansive Cruising Area than Galilea's application subsequently requested on May 12, 2015.  (Cf. Fagan Exhibit 4, ER92-96 with Fagan Exhibit 6, ER166-171.)  Galilea, LLC did not purchase the coverage Defendants offered in 2014.  (Fagan Exhibit 4, ER84-85 ¶¶ 5-6.)

### (ii)   2015: Galilea, LLC Contacts Pantaenius Without a Broker

The Kittlers have admitted that in 2015, Galilea, LLC chose not to employ a broker to assist in placing coverage for the GALILEA.  (Fagan Exhibits 8 ¶ 5, 9 ¶ 5.)  Mr. Kittler submitted an Online Quote Request to Pantaenius on/about May 7, 2015, which he completed to state in part:

Nearest Zip Code or Location
| Winter (Nov 2nd – July 14th) | | Summer (July 15th – Nov 1st) | |
| --- | --- | --- | --- |
| Country: | United States | Country: | United States |
| ZIP: | 92101 | ZIP: | 92101 |
| Location: | San Diego, CA | Location: | San Diego, CA |

Additional Vessel Information
Cruising Area:                   West Coast USA
Vessel located south of 30.5 degrees north latitude during hurricane season?                   No

9

(Fagan Exhibit 4, ER83 ¶ 3, ER90-91; Fagan Exhibit 5, ER140.)

On May 7, 2015, an insurance quote was provided; Galilea, LLC's members reviewed it and decided to complete the application.  (Fagan Exhibit 5, ER140.)  On May 12, 2015, Mrs. Kittler submitted a signed copy of the application (hereinafter "Application") by e-mail to Pantaenius' New York office.  (Fagan Exhibit 6, ER165-171.)  The signed Application submitted by Galilea, LLC reflected a Premium Estimate of $7,779.30 for the following Cruising Area:

> **Cruising Area:**
> Inland waters, bays and coastal waters east to 50º West Longitude and west to 135º West Longitude and north to 52º North Latitude, and south to 30.5º North Latitude.

(Id., ER169; Fagan Exhibit 4 at ER 84-86, ¶¶ 6, 10.)  No objection was made to the Cruising Area when Galilea, LLC submitted its signed Application on May 12, 2015. (Fagan Exhibit 4, ER86 ¶ 10.)  Galilea, LLC handwrote the response, "San Diego, California" next to "Hurricane Season."  The signed application further stated:

> **APPLICANT'S STATEMENT**
>
> **I have read and understood all of the information and statements contained in this application, which I understand will be relied upon by the Insurance Company in placing any risk associated with this application.  I acknowledge that some of the information contained in this application may have been filled in by Pantaenius America Ltd. based upon**

**information provided by me or my agents.  I certify that to the best of my knowledge all information and statements contained in this application are true and correct.**
**If the named insured is a business entity, the undersigned warrants they have legal authority to execute on behalf of the entity.**

(Fagan Exhibit 6, ER170.)

Based on the signed Application and representations made therein, a Binder for Yacht Insurance dated May 13, 2015 ("Binder"), which was to be effective from May 12, 2015 until May 26, 2015, was forwarded to Galilea, LLC by e-mail together with a copy of the 2015 PAYP Terms and Conditions watermarked "Sample".  ((Fagan Exhibit 4, ER86-87 ¶ 11, ER97-113; see also Fagan Exhibit 7, ER203-216.)  The printed language in the Binder stated in bold type:

> As instructed, we have bound insurance coverage described below on behalf of the issuing insurance company or companies. Policy and invoice will be delivered to you when all outstanding documentation and information is received and accepted by Pantaenius America. This binder shall remain in force until the binder expiration date listed above. This insurance coverage is subject to the terms and conditions of the insurance policy.

(Fagan Exhibit 4, ER100; Fagan Exhibit 7, ER204.)  The provided PAYP Policy Terms and Conditions define the navigational limits of coverage in terms of the "Cruising Area" as follows:

**A2(d): NAVIGATIONAL LIMITS**
The insurance coverage is effective only when the insured vessel(s) are within the "cruising area" specified on the

declaration sheets. The cover includes any customary stay out of the water, e.g., at winter storage or shipyards including hauling out and launching. Coverage is provided for deviation outside of the navigational limits for emergencies, provided that such deviation is necessary to avoid casualty, prevent personal injury, or preserve human life.

(Fagan Exhibit 4, ER105; Fagan Exhibit 7, ER208.)

On May 14, 2015, Pantaenius' office in Harrison, New York, provided the Policy to Galilea, LLC by e-mail. (Fagan Exhibit 7, ER218-236.) The Policy was issued in New York and directed Galilea, LLC to contact Pantaenius America Ltd. in Harrison in case of a claim. (Fagan Exhibit 7, ER225, 236.) The Policy sets forth the same Cruising Area specified in the signed Application and provides the definition of Navigational Limits in paragraph A2(d) of the PAYP Terms and Conditions. (Fagan Exhibit 7, ER224, 227.)

The relevant arbitration clause at paragraph A11 of the Policy states as follows:

**A11:  JURISDICTION AND CHOICE OF LAW**
This insurance policy shall be governed by and construed in accordance with well established and entrenched principles and precedents of substantive United States Federal Maritime Law, but where no such established and entrenched principles and precedents exist, the policy shall be governed and construed in accordance with the substantive laws of the State of New York, without giving effect to its conflict of laws principles, and the parties hereto agree that any and all dispute arising under this policy shall be resolved exclusively by binding arbitration to take place within New York County, in the State of New York and to

12

be conducted pursuant to the Rules of the American Arbitration Association.

Galilea, LLC alleges that the vessel was in the Caribbean Sea and/or Puerto Rico at the time the application was submitted, and that the Kittlers so informed Pantaenius.  Compl. ¶¶ 19, 21.  Pantaenius disputes that; at no time prior to the loss were Andrea Giacomazza or anyone else at Pantaenius advised by telephone or otherwise that the insurance was being placed for a yacht that was transiting from the Caribbean to the U.S. West Coast.  (Fagan Exhibit 4, ER82-83 ¶ 2; Fagan Exhibit 5, ER154, 155.)  To the contrary, the description of the "Cruising Area" requested by Galilea, LLC in the online quote request was "West Coast USA" and this was specifically set forth in the Application, the Binder and the Policy, all of which were disclosed to Galilea, LLC and Mr. and Mrs. Kittler. (Id.)

Further, the location of the vessel at the time the Application was submitted on May 12, 2015, and whether it was on its way to San Diego as alleged have not been established.  Pantaenius' investigation of the claim, which included an independent marine surveyor's interview of Mrs. Kittler and Jennie Minor, a hired captain,[2] revealed that from the time Galilea, LLC

---

[2] Despite the terms of the policy, the fact that paid crew would be operating the GALILEA was not made known to Pantaenius and the underwriters prior to the loss.  (Fagan Exhibit 5, ER155, 156-157.)

13

purchased the GALILEA until May 21, 2015, the vessel stayed in the Miami / Fort Lauderdale area except for passages between Fort Lauderdale, Stewart, St. Augustine, Palm Beach, Miami, and as far north as Jacksonville, Florida, and further that it was not until on or about May 21, 2015, that the vessel departed from Fort Lauderdale on a trip that took it to the Turks and Caicos Islands, the Dominican Republic, Puerto Rico, St. Thomas, St. Maarten, and made a stop in Cartagena, Colombia, on June 22, 2015, en route to the intended destination of Shelter Bay Marina in Colon, Panama (Fagan Exhibit 5, ER152-153.)  It was allegedly Galilea, LLC's intention to travel from Shelter Bay Marina to San Diego, California. (Id., ER153.)  However, on June 24, 2015, the vessel allegedly grounded at the entrance to a bay the hired captain believed to be Shelter Bay, but was approximately 35 miles away from it.  (Id.)

At around 12:15 PM on June 24, 2015, Mr. Kittler telephoned Pantaenius to report a claim arising from the grounding of the GALILEA. The call was received by the Pantaenius' Claims Advisor, Thomas Mullady. (Fagan Exhibit 5, ER136 ¶ 2.)  Based on the information conveyed by Mr. Kittler, Pantaenius understood that the vessel had grounded while en route to or from the Panama Canal on June 24, 2015. (Id. ¶ 3.)

14

The location of the grounding in Panama (Nombre de Dios) has a latitude of approximately 9 degrees, 35.5 minutes North, more than 1,200 miles south of the Cruising Area to which the Policy applies, as San Diego's latitude is 32 degrees, 42.55 minutes North.  (Id. ER137 ¶ 7, ER147.)  Notice was given to Galilea, LLC on June 28, 2015, that based upon all of the information available to Pantaenius at that time there would be no coverage for the loss and/or salvage of the vessel, and that the Galilea, LLC should therefore act as a prudent self-insured to protect its property. (Id. ER137-138 ¶ 8, ER149.)  The location of the grounding was confirmed by an attending surveyor who conducted an interview of Mrs. Kittler and Captain Jennie Minor on/about June 28, 2015.  (Id. ER137 ¶ 7.)  Thereafter, on July 9, 2015, Galilea, LLC was again advised that there was no coverage for the loss.  (Id. ER138 ¶ 9, ER151-158.)  Pantaenius noted that, at the time of the grounding, the GALILEA was well south of 30.5 degrees North Latitude and therefore outside of the navigational limits of the policy.  (Id. ER153.)  On July 20, 2015, Galilea, LLC contested the denial of the claim by written correspondence. (Fagan Exhibit 7, ER175 ¶ 18.)  Legal proceedings followed.

MOULTON BELLINGHAM PC
Attorneys at Law

## **ARGUMENT**

### **POINT I**

### **AS THE BUTTE DIVISION IS AN IMPROPER VENUE, DEFENDANTS MAKE AN UNOPPOSED REQUEST TO TRANSFER TO THE BILLINGS DIVISION**

A party may move the Court to change venue.  Fed. R. Civ. P. 12(b)(3).  "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Proper divisional venue within the District of Montana is in any Division of the Court containing a county of proper venue under the laws of the State of Montana.  L.R. 3.2(b).

Plaintiff Kittler resides in Melville, Montana.  Compl. ¶ 2.  Plaintiff Galilea, LLC is organized under Nevada law.  Plaintiff Kittler and her husband, Chris, are the sole members of Galilea, LLC.  Id. ¶ 1.

Moving Defendants are all nonresident corporate defendants. Compl. ¶¶ 3 & 5-7. Co-Defendant Andrea M. Giacomazza is a nonresident defendant. Id. at ¶ 4.

The Billings Division is the proper venue for this action, even though Plaintiffs filed in the Butte Division, to which there is no proper connection. Plaintiffs do not reside within any county comprising the Butte Division; no

16

tort accrued in any county comprising the Butte Division; no loss under the insurance contract at issue occurred in any county comprising the Butte Division nor would any payment under the insurance contract be made in any such county; and no defendant resides in any county within the Butte Division.

Generally, any county in which a defendant resides is a proper venue for a civil action.  Mont. Code Ann. § 25-2-118(1).  If no defendant resides in Montana, the proper venue for a contract action is specified at Mont. Code Ann. § 25-2-121(1)(b) or (2), and for a tort action at Mont. Code Ann. § 25-2-122(2) & (3).  See Mont. Code Ann. § 25-2-118(2).  Since no defendant resides in Montana, venue must be considered under these statutes.

The gravamen of Plaintiffs' complaint sounds in contract since all claims relate to, and derive from, the Policy at issue.  On that basis, venue is subject to Mont. Code Ann. § 25-2-121(2)(c) because it governs "contracts of indemnity or insurance."  Under § 25-2-121(2)(c), the proper venue for this action would be "the county where the loss or injury occurred or where a judgment is obtained against the assured or indemnitee or where payment is to be made by the insurer."

MOULTON BELLINGHAM PC
Attorneys at Law

Applying this statute, the proper venue would be the Billings Division. Plaintiff Kittler resides in Melville, Montana, which is in Sweet Grass County, which is designated as within the Billings Division. See L.R. 1.2(c)(1).  Payment would be made to Plaintiff Kittler's residence. Therefore, under § 25-2-121(2)(c), the proper venue for this action is the Billings Division.

Further, the Billings Division would be the proper venue even if the statute for a tort action were applied.  The proper venue "for a tort action against a nonresident defendant—corporate or otherwise—is the county in which the tort was committed, the county in which the plaintiff resides or, in the case of a corporate defendant, the county in which the corporation's resident agent is located." See Rule v. Burlington N. & Santa Fe Ry. Co., ¶ 24, 2005 MT 6, 325 Mont. 329, 106 P.3d 5339, citing Mont. Code Ann. §§ 25–2–118(2) and 25–2–122(2) and (3).  Here, venue under the tort statute would again be the Billings Division, as that is where Plaintiff Kittler resides, or the Helena Division, because several of the Defendants have registered agents based there (Pantaenius, Liberty Mutual, and Torus).

It is also respectfully submitted that venue in the Billings Division makes sense in the interests of judicial economy and convenience because Judge Watters has already addressed the GALILEA dispute in case

MOULTON BELLINGHAM PC
Attorneys at Law

number 1:15-cv-00084-SPW.  Pursuant to 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought …"

Accordingly, under either Montana's contract venue statute or tort venue statute, venue for this case is proper in the Billings Division but not in the Butte Division.  Defendants respectfully make an unopposed request that venue be changed to the Billings Division.

## POINT II

### PLAINTIFFS SHOULD BE COMPELLED
### TO ARBITRATE DISPUTES BEFORE THE AAA IN NEW YORK

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, where a party refuses to arbitrate under a written agreement, a party may move a district court for an order directing such arbitration to proceed.  9 U.S.C. § 4.  "The court shall hear the parties and, upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the Court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id.  More than three years after AAA arbitration was commenced, and after extensive litigation, Galilea, LLC and its members continue to attempt to

19

avoid arbitrating the dispute concerning the grounding of the GALILEA

outside the navigational limits of the Policy.

The Ninth Circuit has already ruled that the Policy is subject to the

FAA, not Montana law, and that the Insurer Defendants are entitled to

enforce the Policy's arbitration clause requiring arbitration of disputes in

New York under AAA rules.  Galilea, LLC v. AGCS, 879 F.3d 1052 (9th Cir.

2018).  The District Court stated:

> The Kittlers performed their end of the contract by paying the
> insurance premium on May 19, 2015.  (Doc. 7-3 at 4 [referring to
> Mr. Kittler's sworn declaration]).  Galilea, LLC agreed to the
> arbitration provision in the policy when it paid the premium, just
> as it agreed to every other provision and exclusion found in the
> policy.

Galilea, LLC v. AGCS Marine Ins. Co., No. CV 15-84-BLG-SPW, 2016 WL

754221, at *6 (D. Mont. Feb. 24, 2016).

The Insurer Defendants are entitled to enforce the Policy's arbitration

clause against Mrs. Kittler, as she attempts to personally assert claims

under the Policy even though Galilea, LLC owns the GALILEA. Compl. ¶ 1.

If Mrs. Kittler is arguing that she is an insured under the Policy, then she is

bound by its terms.  If Mrs. Kittler argues that she did not sign the Policy or

Application, the Second Circuit has bound non-signatories to arbitration

agreements under an estoppel theory.  See, e.g., Deloitte Noraudit A/S v.

20

Deloitte Haskins & Sells, U.S., 9 F.3d 1060, 1064 (2d Cir.1993).  The

Second Circuit has stated that, "[a] party that is not a signatory to a contract

containing an arbitration clause is estopped from denying its obligation to

arbitrate when it seeks to receive a 'direct benefit' from the

contract."  World Omni Fin. Corp. v. Ace Capital Re Inc., 64 F. App'x 809,

812 (2d Cir. 2003).  Here, Mrs. Kittler e-mailed the signed Application to

Pantaenius, and it expressly provides for AAA arbitration in New York.

(Fagan Exhibit 6, ER165-171.)  It is telling that her husband has conceded

that claims against the Insurer Defendants must be brought in AAA

arbitration in New York.

      Further, the parties' forum-selection and arbitration agreements

requiring arbitration in New York before the AAA should be enforced

pursuant to the doctrine of *forum non conveniens*.  While a *forum non*

*conveniens* analysis in a typical case includes evaluation of both the

convenience of the parties and various public-interest considerations, "a

valid forum-selection clause [should be] given controlling weight in all but

the most exceptional cases."  Atl. Marine Const. Co. v. U.S. Dist. Court for

W. Dist. of Texas, 571 U.S. 49, 62-63, 134 S. Ct. 568, 581, 187 L. Ed. 2d

487 (2013) (citations omitted).  In the presence of a valid forum-selection

clause, a district court's analysis is altered in three ways: (1) the plaintiff's

choice of forum merits no weight; (2) arguments about the parties' private interests should not be considered; and (3) when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, transfer of venue will not carry with it the original venue's choice of law rules.  Id., 571 U.S. at 63–65, 134 S. Ct. at 581–82.

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) for the dismissal of this action in favor of arbitration.  If the Court declines to dismiss the action, Defendants request that it at least be stayed pending the outcome of the arbitration, pursuant to 9 U.S.C. § 3.

## POINT III

## PLAINTIFFS' CLAIMS SHOULD BE DISMISSED

### A.   Mrs. Kittler's Claims Should Be Dismissed

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 17, Defendants move to dismiss all of Mrs. Kittler's claims set forth in Counts VIII through XIV for want of jurisdiction due to lack of standing.  Galilea, LLC is the real party in interest as the owner of GALILEA, and it is already pursuing claims against the Insurer Defendants in arbitration, having been compelled to arbitrate them.  A limited liability company is a legal entity separate and distinct from its members, and when it suffers losses to its property, that entity is the proper party plaintiff to pursue an action against

an alleged tortfeasor.  See, e.g., Kelly v. Porter, Inc., 687 F. Supp. 2d 632, 637 (E.D. La. 2010).  "Real and personal property owned or purchased by a company must be held and owned, and conveyance made, in the name of the company."  Nev. Rev. Stat. Ann. § 86.311 (West).  Galilea, LLC has the capacity to "sue and be sued, complain and defend, in its name."  Nev. Rev. Stat. Ann. § 86.281 (West).  As Mrs. Kittler has not suffered a loss, she has no standing to personally assert claims for damage to property owned by Galilea, LLC.  She is unfairly subjecting Defendants to the risk of multiple liabilities and the obligation to defend against duplicative claims.  Her claims should be dismissed.

**B.  Governing Law**

It is unclear whether Plaintiffs purport to bring their claims under Montana law, particularly as the complaint mentions Montana's Unfair Trade Practices Act.  Compl. ¶¶ 54, 111.  The Ninth Circuit has already stated that, "[t]here is no question that Montana law has relatively little to do with this dispute." Galilea, LLC v. AGCS Marine Ins. Co., et al., 879 F.3d 1052, 1059 (9th Cir. 2018).  The Ninth Circuit held enforceable both the policy's choice of law of federal maritime law, or in the absence of established and entrenched principles or precedents then New York law, and the application's choice of New York law.

MOULTON BELLINGHAM PC
Attorneys at Law

## C.    Counts VIII through XIV Should Be Dismissed

Count VIII, Declaratory Relief, should be dismissed to the extent Mrs. Kittler purports to assert it under Mont. Code Ann. § 27-8-201, as the Ninth Circuit has already ruled that the Policy is governed by federal maritime law and/or New York law.

Count IX, Breach of Contract, should be dismissed as a matter of law because a plain reading of the Policy, including paragraph A2(d): Navigational Limits, reveals that there is no coverage for a grounding in Panama because the Cruising Area requested by the Plaintiffs was near San Diego, California.  Plaintiffs could have been determined that before the loss by complying with their obligation to read the Policy.  See Katz v. Am. Mayflower Life Ins. Co. of New York, 14 A.D.3d 195, 198, 788 N.Y.S.2d 15 (2004), aff'd sub nom. Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561, 841 N.E.2d 742 (2005) ("It is a well-settled principle of law in this state that an insured has an obligation to read his or her policy and is presumed to have consented to its terms.")

Count X, Promissory Estoppel, is stated in conclusory terms and fails as a matter of law because it is duplicative of Count IX, "Breach of Contract."  See IMG Int'l Mktg. Grp., Inc. v. SDS William St., LLC, 32 Misc. 3d 1233(A), at *5 (Sup. Ct. N.Y. Co. 2011) (holding that "a promissory

24

estoppel claim will not succeed in absence of a duty independent of the

agreement where it is merely duplicative of plaintiff's breach of contract

claim") (citing <u>Celle v. Barclays Bank P.L.C.</u>, 48 A.D.3d 301, 303 (1st Dep't

2008)); <u>Guerrero v. W. 23rd St. Realty, LLC</u>, 45 A.D.3d 403, 404 (1st Dep't

2007) (affirming dismissal of plaintiff's claim for equitable estoppel as

duplicative of the breach of contract causes of action).  In other words,

where plaintiff's claim is related to a breach of contract claim, plaintiff "may

only set forth allegations that are not subsumed in their claim for breach of

contract."  <u>NYU Hosps. Ctr. v. Huang</u>, No. 102832-2011, 2012 WL 251551

(Sup. Ct. N.Y. Co. Jan. 18, 2012).  To the extent Mrs. Kittler alleges that

Insurer Defendants promised to provide coverage for the yacht and implies

they did not, that is duplicative of the Breach of Contract claim set forth in

Count IX.

Count XI, Equitable Estoppel, similar to claims for promissory

estoppel, should be dismissed because such claims are legally insufficient

when they are duplicative of a breach of contract claim (Count IX).  <u>City of</u>

<u>New York v. 611 W. 152nd St., Inc.</u>, 273 A.D.2d 125, 126 (1st Dep't 2000);

<u>see also</u> <u>Robare v. Fortune Brands, Inc.</u>, 39 A.D.3d 1045, 1046 (3d Dep't

2007) (explaining that "equitable estoppel does not apply where the

misrepresentation or act of concealment underlying the estoppel claim is

the same act which forms the basis of [the] plaintiff's underlying substantive cause[s] of action") (internal quotations and citation omitted).  As in the promissory estoppel claim, Mrs. Kittler's equitable estoppel claim alleges no independent duty outside of the Policy and again relies solely on an alleged promise to provide coverage and a perceived breach because the GALILEA was not covered while outside of the navigational boundaries set forth in the Policy.  See Compl. ¶¶ 103-104.

Count XII, Breach of Fiduciary Duty, fails as a matter of law.  New York courts have held that generally a fiduciary duty does not arise in the relationship between an insurer and insured.  See Batas v. Prudential Ins. Co. of Am., 281 A.D.2d 260, 264 (1st Dep't 2001); see also Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am., 51 F. Supp. 3d 379, 399-401 (S.D.N.Y. 2014) (holding that relationship between insurer and insured was "nothing more than arm's length deal-making" and did not amount to a fiduciary relationship where the parties negotiated the terms of the insurance policy for a month and where insurer provided proposals and representations about coverage to insured).  "[M]ere superior knowledge of a product is not enough to create a fiduciary relationship."  Metro Missions, Inc. v. US 1 Holdings, 35 Misc. 3d 1229(A), 954 N.Y.S.2d 760 (Sup. Ct.

MOULTON BELLINGHAM PC
Attorneys at Law

2012) (citing Fortino v. Hersh, 307 A.D.2d 899, 900, 764 N.Y.S.2d 25 (1st Dep't 2003)).

Similarly, Count XIII, Negligent Misrepresentation, should be dismissed because "a cause of action for negligent or fraudulent misrepresentation cannot arise 'out of the same facts that serve as the basis for [a plaintiff's] causes of action for breach of contract.'"  Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas, 509 F. App'x 54, 57 (2d Cir. 2013); see also Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d 382, 389 (1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.")  Here, like Count IX, Count XIII alleges that Plaintiffs were sold a policy that did not provide coverage for the yacht while it was in the Caribbean.  Of course, Plaintiffs could have determined that when they received the policy terms by complying with their obligation to read them.  See Katz v. Am. Mayflower, 14 A.D.3d at 198, 788 N.Y.S.2d 15 (2004) ("It is a well-settled principle of law in this state that an insured has an obligation to read his or her policy and is presumed to have consented to its terms.")

Count XIV, Constructive Fraud, fails as a matter of law because these are merely breach of contract allegations.  As explained above, there was

MOULTON BELLINGHAM PC
Attorneys at Law

no fiduciary relationship between the parties.  Plaintiffs did not comply with their obligation to read the Policy, and are presumed to have consented to its terms.  See Katz, 14 A.D.3d at 198, 788 N.Y.S.2d 15 (2004).  "Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud . . . are generally precluded, unless based on a duty independent of the contract."  Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy, 449 F. App'x 57, 59 (2d Cir. 2011).  Further, if Plaintiffs purport to bring a constructive fraud claim under Montana law, it would clearly be time barred pursuant to the two-year statute of limitations set forth in Mont. Code Ann. § 27-2-203.

## POINT IV

### ALTERNATIVELY, THE ACTION SHOULD BE STAYED PENDING THE OUTCOME OF THE AAA ARBITRATION IN WHICH GALILEA, LLC AND CHRIS KITTLER CLAIM THE SAME ALLEGED DAMAGES

According to the complaint, Taunia Kittler, the second plaintiff herein, and her husband Chris Kittler are the "sole and managing members of Galilea, LLC."  Mr. Kittler is not a party to this action, but is attempting to pursue claims against the Insurer Defendants in AAA arbitration in New York, in addition to the claims being pursued by Galilea, LLC.  (Eisenhower Decl. ¶¶ 4, 7.)  This creates a bizarre situation in which one spouse

28

concedes that he must pursue any claims against the Insurer Defendants in AAA arbitration in New York, yet the other spouse (who personally sent the signed insurance application to Pantaenius – Fagan Exhibit 6, ER 165-171) is attempting to litigate against the Insurer Defendants as if she were not bound by the arbitration clause set forth in the Policy.  Galilea, LLC, the title owner of the yacht, is the real party in interest.  Mr. and Mrs. Kittler should not be allowed to personally pursue claims relating to the grounding of Galilea, LLC's yacht as it subjects the Defendants to the risk of multiple liabilities for, and the costs of defending in multiple forums against claims for, the same alleged "damages in excess of $1,566,500."

Accordingly, if the Court does not compel Plaintiffs to arbitrate all of their claims, and does not dismiss all of their claims, Defendants request that this action be stayed pending the outcome of the current AAA arbitration, which could render moot the claims asserted herein.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the relief requested in this motion, including: the unopposed transfer of venue to the Billings Division; and/or an order compelling Plaintiffs to bring their disputes to arbitration in New York under AAA rules and dismissing or staying this action; and/or an order dismissing, with

29

prejudice, Plaintiffs' claims; and/or an order staying the action pending the outcome of the AAA arbitration in New York in which Galilea, LLC and Mr. Chris Kittler are claiming the same alleged "damages in excess of $1,566,500"; and/or such other, further, and different relief as the Court may deem appropriate.

**DATED** this 24th day of August, 2018.

MOULTON BELINGHAM PC

By:  /s/ Gerry P. Fagan
GERRY P. FAGAN

ATTORNEYS FOR DEFENDANTS,
AGCS MARINE INSURANCE
COMPANY, LIBERTY MUTUAL
INSURANCE COMPANY, and TORUS
NATIONAL INSURANCE COMPANY

- and -

*Of Counsel*

Gerard W. White
Brian P. R. Eisenhower
HILL RIVKINS LLP
45 Broadway, Suite 1500
New York, NY 10006
Tel.: (212) 669-0600
gwhite@hillrivkins.com
beisenhower@hillrivkins.com

30

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with Local Rule 7.1(d)(2)(E), I certify that the foregoing memorandum of law was prepared with Microsoft Word, which provides a word count of 6,496 words, excluding caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

This 24th day of August, 2018.

Respectfully submitted,

/s/ Gerry P. Fagan
Gerry P. Fagan

*Attorneys for Defendants, AGCS Marine Insurance Company, Liberty Mutual Insurance Company, and Torus National Insurance Company*

31