# Eisenhower Exhibit 1

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| AGCS MARINE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, and TORUS INSURANCE COMPANY,<br><br>Claimants,<br><br><br>GALILEA, LLC,<br><br>Respondent, | Case No.: 01-15-0004-4914<br><br><br>OBJECTIONS, ANSWER:<br>AFFIRMATIVE DEFENSES - AND<br>COUNTERCLAIMS |
| GALILEA, LLC and CHRIS KITTLER,<br><br>Counterclaimant,<br><br><br>AGCS MARINE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, and TORUS INSURANCE COMPANY,<br><br>Counterclaim Respondents, | |

## FULL RESERVATION OF RIGHTS AND OBJECTIONS TO ARBITRATION

In submitting the following Answer, Affirmative Defenses, and Counterclaims,

Counterclaimants Galilea, LLC and Chris Kittler fully reserve and do not waive any of their

objections to AAA jurisdiction over this dispute, the arbitrability of this dispute including with

respect to the scope of the relied-on arbitration clause, and the arbitrability of this dispute in New

York State.  Galilea, LLC and Chris Kittler contend that this matter is not properly before the

AAA and must be litigated at least partly in court, and preserves all of their rights including their

constitutional right to a jury trial. Galilea, LLC and Chris Kittler only submit the following

Answer, Affirmative Defenses, and Counterclaims out of an abundance of procedural caution

subject to its objections, and requests that this matter be dismissed and/or stayed in favor of a judicial resolution of their claims. Galilea, LLC and Chris Kittler object to the arbitrability of this dispute and request the opportunity to submit briefing on these issues. Galilea, LLC and Chris Kittler further object to any application of the AAA Commercial Arbitration Rules and state that even if this dispute could be arbitrated, the AAA Consumer Arbitration Rules would apply.

## ANSWER

Galilea, LLC denies all of the allegations by the Claimant insurance companies AGCS Marine Insurance Company ("AGCS Marine"), Liberty Mutual Insurance Company ("Liberty Mutual"), and Torus Insurance Company ("Torus") (collectively, "Insurers") and denies that the Insurers are entitled to any relief in this matter.

## AFFIRMATIVE DEFENSES

The Insurers have not pled specific claims against Galilea, LLC. Their statement of claim is limited to the assertion that they seek a "declaration of rights for denial of coverage under yacht policy (no. 21124282) for a grounding on June 24, 2015" with no further specificity. As such, Galilea, LLC is unable to plead its affirmative defenses to the Insurers' claim at this time. Galilea, LLC fully reserves all of its affirmative defenses.

## COUNTERCLAIMS

For its Counterclaims against Insurers, and each of them, Galilea, LLC and Chris Kittler state and allege as follows:

## PARTIES

1. Galilea, LLC is a single-purpose limited liability company formed by Chris Kittler and Taunia Kittler for the purpose of owning their sailing yacht "Galilea," a 60-foot 2011 Privilege 615 catamaran.

2.     Chris Kittler and Taunia Kittler are the sole and managing members of Galilea, LLC. They reside in Melville, Montana, and are citizens of Montana, and, thus, Galilea, LLC is a citizen of Montana. Galilea, LLC is organized under the laws of Nevada.

3.     Chris Kittler is a beneficial owner of the Galilea.

4.     AGCS Marine is an insurance company registered with the Montana Office of the Commissioner of Securities & Insurance. AGCS Marine is organized under the laws of Illinois and has its principal place of business in Chicago, Illinois. ACGS is a citizen of Illinois.

5.     Liberty Mutual is an insurance company registered with the Montana Office of the Commissioner of Securities & Insurance. Liberty Mutual is organized under the laws of Massachusetts and has its principal place of business in Boston, Massachusetts. Liberty Mutual is a citizen of Massachusetts.

6.     Torus is an insurance company that appears to be registered with the Montana Office of the Commissioner of Securities & Insurance. Torus is organized under the laws of Delaware and has its principal place of business in Jersey City, New Jersey. Torus is a citizen of Delaware and New Jersey.

7.     Pantaenius America Ltd. ("Pantaenius") was the agent of, and acted on behalf of, the Insurers at all relevant times, including with respect to the issuance of coverage and communicating with Galilea, LLC regarding the issuance of coverage.

## FACTS

7.     This dispute is about whether the Insurers have wrongfully and unreasonably denied coverage for the loss of the Kittler's yacht, Galilea, which was destroyed when run aground on June 24, 2015.

8.     In May 2015, the Kittlers were sailing Galilea in the Caribbean, including with their three children and Taunia Kittler's father, ultimately headed towards the Panama Canal and then a marina in San Diego, California, which was to be Galilea's home port.

9.     The Kittlers were evaluating potential new insurers for Galilea, and a contact had recommended Pantaenius American Yacht Insurance ("Pantaenius"). Chris Kittler researched Pantaenius online, viewing its website, which advertises Pantaenius as "the leading yacht insurance provider worldwide" and as providing "comprehensive yacht insurance cover[age],' , including "[c]overage for worldwide navigation." Pantaenius also marketed itself as being "always at your side."

10.     On or about May 6, 2015, Chris Kittler completed a basic questionnaire and submitted it to Pantaenius.

11.     The questionnaire did not ask for the current location of Galilea, and it did not disclose that the location information that was requested by the questionnaire would be used to purportedly limit the geographical scope of insurance coverage for Galilea.

12.     In response, on May 7, 2015, Pantaenius emailed Chris Kittler and specifically touted its offering of "worldwide navigation limits." In the email, Pantaenius also advised Chris Kittler that a "significant benefit with the Pantaenius America Yacht Policy [was its] ability to service insurance needs throughout the world."

13.     Pantaenius also provided a premium estimate quotation. The quote identified a "Cruising Area" but did not disclose or explain the significance of the "Cruising Area" or that the scope of coverage that would be issued would be somehow limited by this "Cruising Area."

14.     The quote listed a Montana address for Galilea, LLC.

15.     The Kittlers communicated by phone and email with a Pantaenius representative, Andrea Giacomazza, about purchasing the Policy. The Kittlers advised her, and Panteanius thus well knew, that Galilea was at that very instant sailing in the Caribbean. Indeed, both Chris and Taunia Kittler, in separate phone calls, told Ms. Giacomazza where Galilea was, and Taunia Kittler explained to her that completing and submitting a hard copy of the insurance application would require them to stop in Puerto Rico to buy a printer/scanner because they were sailing the Galilea toward the Panama Canal and ultimately the San Diego area.

16.     In the course of these communications, Pantaenius did not advise Chris or Taunia Kittler that there would be no insurance coverage for Galilea until it neared or reached San Diego.

17.     On May 12, 2015, after Taunia Kittler purchased the printer/scanner in Puerto Rico and the application was completed, she emailed the application to Pantaenius. The application

was signed by Chris Kittler on behalf of Galilea LLC and listed a Montana address for Galilea, LLC.

18.     On May 13, 2015, at 12:25 p.m., Pantaenius emailed the Kittlers a yacht insurance proposal and advised the Kittlers that "the advantages of the Pantaenius America Yacht Policy" included the availability of "[w]orldwide navigation limits."

19.     Two minutes later, at 12:27 p.m., Pantaenius emailed the Kittlers an insurance binder and thanked Chris Kittler "for the opportunity to provide insurance coverage for [the Galilea]. "

20.     The binder stated that insurance coverage for the Galilea commenced on May 12, 2015 at 12:01 a.m. EST, as the Kittlers had requested on the application. The Insurers promised to provide both property and liability coverages. Under the binder, the total agreed fixed value of Galilea was $1,566,600. The binder referenced a "Cruising Area" but again did not explain its purported significance or state that the scope of coverage for Galilea would be somehow limited by this "Cruising Area."

21.     The binder also listed a Montana address for Galilea, LLC.

22.     The Kittlers relied on the Insurers' promises and representations that Galilea was covered as of May 12, 2015. Among other things, their reliance included refraining from purchasing other insurance to protect the Galilea during its voyage to San Diego.

23.     On May 14, 2015, Pantaenius sent to the Kittlers a 3-page declaration sheet, an insurance policy form, a "Confirmation of Cover" document, and an invoice. The enclosed letter was addressed to Galilea, LLC at a Montana address.

24.     At Paragraph "A3: Insured," the insurance policy form sent to the Kittlers defined the "insured" under the policy to include "the beneficial owner of the vessel (if not the named insured)." The beneficial owners of the Galilea were Chris and Taunia Kittler. Accordingly, Chris and Taunia Kittler are Insureds under the policy.

25.     On May 19, 2015, the Kittlers arranged for and paid to the Insurers $7,779.30 in premium for one year of coverage for the Galilea.

26.     On June 24, 2015, the Galilea was grounded in an accident off the coast of Panama. Chris Kittler and his sons had returned to the United States for work and the Galilea was continuing on to San Diego. Taunia Kittler, the Kittlers' 11-year-old daughter, Taunia Kittler's father, and a captain were aboard at the time of the accident.

27.     The accident was dangerous and horrifying — the yacht flooded and those aboard required emergency rescue by local authorities. Chris Kittler was notified and awoken by a call from the United States Coast Guard in the middle of the night.

28.     The accident badly damaged the Galilea. Both hulls were holed and the structural framing of the hulls was damaged and displaced. The rudders, main engines, propellers, and propeller shafts were all damaged. And the interior of the Galilea was flooded, compromising the interior and electrical system. The accident also caused rigging and mast damage, among other things.

29.     The vessel was a complete loss, with total repair estimates exceeding $1.6 million.

30.     That same morning of June 24, 2015, Chris Kittler notified Pantaenius of the accident and made a claim for coverage, including a request for immediate assistance with salvage efforts.

31.     Even though Pantaenius's advertised commitment is "always at your side" and even though Pantaenius holds itself out as providing 24-hour-a-day availability "to efficiently and competently assist you with an emergency yacht claim," within hours of receiving notification of the accident and insurance claim, Pantaenius sent an email stating that the Kittlers were "obligated to deal directly with any salvage company and coordinate efforts to salvage" the Galilea.

32.     Without any apparent investigation of its knowledge of the location of Galilea at the time it promised the Kittlers that Galilea was insured and covered, Pantaenius denied any responsibility on behalf of the Insurers and advised that neither it nor the Insurers would provide any insurance coverage or assistance to the Kittler family in the salvage efforts or otherwise.

33.     The sole basis for the Insurers' denial of coverage is a "Navigational Limits" provision in the insurance policy form at Section A2(d), purporting to limit coverage, absent certain exceptions, to when the vessel is within the "Cruising Area" identified by coordinates on the third page of the declaration sheet. The Insurers claim that because the grounding took place outside of the coordinates defining the "Cruising Area" there is no coverage and they have no responsibilities in connection with the loss of the Galilea and the accident. Incredibly, the Insurers now deny any knowledge that the Kittlers were sailing in the Caribbean, or of Galilea's whereabouts, at the time the Insurers promised to provide insurance coverage for the Galilea.

34.     The Insurers do not claim that the Kittlers misrepresented Galilea's location at any time, nor is there any conceivable reason that the Kittlers would do so. The Kittlers went to great lengths to obtain insurance coverage while they were in the middle of a significant sea voyage. They believed, in reliance on their communications with Pantaenius — the "leading yacht

insurance provider worldwide" according to its website — that they had purchased insurance that provided coverage the day they submitted the application, for their then-present circumstances — sailing in the Caribbean on the insured vessel toward the Panama Canal and ultimately San Diego.

35.     Notably, the Insurers' application form did not ask where the vessel was then located. The only place on the application to provide information about the vessel's location at any time is one labeled "Hurricane Season," next to which was accurately written "San Diego, California," where the Kittlers were taking the Galilea. Under "Contact Details of the Yacht,' , only a cell phone number and email address were listed. And a Montana address for Galilea, LLC was provided.

36.     In short, despite taking the $7,779.30 premium on May 19, 2015 for the Policy, with a promise to insure and provide coverage for Galilea as of the May 12, 2015 coverage commencement date, and despite Pantaenius's website's representation that it will "efficiently and competently assist you with an emergency yacht insurance claim," the Insurers, through their agent Pantaenius, responded to the Kittlers' crisis by telling them, within hours of being notified of the emergency, that the insurance coverage promised and paid for just over a month before was of absolutely no value to them and that they were on their own to deal with the traumatic accident off the coast of Panama.

37.     Upon information and belief, the Insurers have denied their coverage responsibilities to Galilea, LLC without reasonable investigation.

38.     The Insurers have denied their coverage responsibilities to Galilea, LLC without reasonable basis.

39.     Moreover, following the Insurers' denial of any coverage responsibility, the Insurers interfered with Galilea, LLC's attempted salvage efforts by causing Triton Salvage Company to stop its salvage efforts.

40.     By doing so, the Insurers caused further damage to Galilea, LLC, including but not limited to the eventual looting of the Galilea.

41.     On July 20, 2015, the Kittlers sent a demand letter to the Insurers, explaining their disappointment with the Insurers' handling of the insurance claim, requesting that the Insurers reconsider their denial of coverage, and asking the Insurers to provide certain requested information and documents.

42.     On July 28, 2015, the Insurers acknowledged receipt of the letter and advised Chris Kittler by email that they would provide a response shortly.

43.     But instead of responding to the letter, the Insurers filed this arbitration action against Galilea, LLC.

44.     Should this matter be properly determined to be subject to mandatory arbitration over Galilea, LLC's objections, Galilea, LLC and Chris Kittler seek a declaration that the occurrence is fully covered, an award for Galilea, LLC's and Chris Kittler's recovery of all amounts for which the Insurers promised to provide coverage, and all other damages to which Galilea, LLC and Chris Kittler are entitled by law and in equity resulting from the Insurers' unreasonable and wrongful denial of coverage, including but not limited to any and all available

consequential damages, attorneys' fees, prejudgment interest, and exemplary, statutory, and/or punitive damages.

45.    Galilea, LLC and Chris Kittler, pleading in the alternative, as applicable, assert the following causes of action against the Insurers.

## COUNT I
## (Declaratory Relief Against All Insurers)

46.    Galilea, LLC and Chris Kittler incorporate and reassert the statements and
allegations in all preceding paragraphs as if fully set forth herein.

47.    An actual and justiciable controversy exists between Galilea, LLC and Chris
Kittler and the Insurers concerning whether the Insurers have a responsibility to provide
insurance coverage for the loss of the Galilea and the subject occurrence, including whether the
"Navigational Limits" provision at Section A2(d) of the policy form document precludes such
coverage.

48.    Galilea, LLC and Chris Kittler seek a declaration that the Insurers are responsible
to provide coverage for the loss of the Galilea and the subject occurrence, and that Galilea, LLC
and Chris Kittler are entitled to all of their rights, and all amounts promised by and due from the
Insurers, without application of the Navigational Limits provision in the policy form document
on which the Insurers rely.

## COUNT II
## (Breach of Contract Against All Insurers)

49.    Galilea, LLC incorporates and reasserts the statements and allegations in all
preceding paragraphs as if fully set forth herein.

50.    The Insurers and Galilea, LLC entered into a contract by which Insurers agreed,
among Other things, to insure the sailing vessel Galilea against loss, and defend and indemnify
Galilea, LLC from liability claims.

51.    The Galilea's grounding off the cost of Panama, and all resulting damage and any
liability claims against Galilea, LLC, constitute covered losses and occurrences under the parties'
contract.

52.     The Insurers have failed and refused to pay amounts due to Galilea, LLC under the parties' contract for the damage to Galilea and Other covered amounts arising out of the subject occurrence, and denied any obligation to defend and indemnify Galilea, LLC from any potential liability claims related to the occurrence and loss.

53.     The Insurers' failure, refusal, and repudiation of any obligation to confirm, accept, and provide coverage under the parties' contract constitutes a breach thereof.

54.     As a result of Insurers' breach of contract, Galilea, LLC has suffered and will suffer damages in excess of $1,566,500.

## COUNT III
### (Contract Reformation Against All Insurers)

55.     Galilea, LLC incorporates and reasserts the statements and allegations in all preceding paragraphs as if fully set forth herein.

56.     The insurance policy that the Insurers assert to be the operative contract between them and Galilea, LLC, as actually written, does not express the contract as understood and agreed upon by the parties, which was to provide coverage for the Galilea as of May 12, 201 5, at its then-current location in the Caribbean and throughout its planned voyage to San Diego through the Panama Canal.

57.     The insurance policy that the Insurers assert to be the operative contract mistakenly includes a "Navigational Limits" provision that purports to exclude coverage for the Galilea, and make the insurance coverage provided to Galilea, LLC, worthless at the time the Insurers represented that the insurance was in effect.

58.     If the insurance policy were determined to be the operative and enforceable contract between the parties, it should be reformed to reflect the actual and true understanding of the parties through the removal of the "Navigational Limits" provision, without which the Insurers do not dispute their coverage responsibilities.

## COUNT IV
### (Promissory Estoppel Against All Insurers)

59.     Galilea LLC and Chris Kittler incorporate and reassert the statements and allegations in all preceding paragraphs as if fully set forth herein.

60.     The Insurers promised to insure and provide coverage for the Galilea effective May 12, 2015.

61.     Galilea, LLC and Chris Kittler relied on the Insurers' promise and representation of coverage.

62.     Galilea, LLC's and Chris Kittler's reliance was both reasonable and foreseeable.

63.     Galilea, LLC and Chris Kittler were injured, and Galilea, LLC  and Chris Kittler have suffered and will suffer damages in excess of $1,566,500 as a result of their reliance.

## COUNT V
### (Equitable Estoppel Against All Insurers)

64.     Galilea, LLC and Chris Kittler incorporate and reassert the statements and allegations in all preceding paragraphs as if fully set forth herein.

65.     The Insurers' conduct, acts, language, and silence amounted to concealment of the Insurers' position that the Galilea was not covered based on its location when the Insurers promised to insure and cover the Galilea effective May 12, 2015.

66.     Galilea, LLC and Chris Kittler reasonably believed that the Galilea was insured and covered effective May 12, 2015, and did not know the Insurers' position that Galilea was not covered.

67.     The Insurers' conduct was undertaken, and their representations were made, with the intention, or expectation, that Galilea, LLC and Chris Kittler would rely on them.

68.     Galilea, LLC and Chris Kittler did rely on the Insurers' conduct and representations to their detriment.

69.     As a result of their reliance, Galilea, LLC and Chris Kittler have suffered and will suffer damages in excess of $1,566,500.

70.     Relief should be granted here, where, in view of all of the circumstances, to deny it would permit Galilea LLC and Chris Kittler to suffer a gross wrong at the hands of the Insurers.

## COUNT VI
## (Breach of Implied Covenant of Good Faith & Fair Dealing Against All Insurers)

71.     Galilea, LLC and Chris Kittler incorporate and reassert the statements and allegations in all preceding paragraphs as if fully set forth herein.

72.     The Insurers and Galilea, LLC entered into an insurance contract by which the Insurers agreed, among other things, to insure the sailing vessel Galilea against loss, and defend and indemnify Galilea, LLC from liability claims.

73.     The Insurers owed Galilea, LLC and Chris Kittler a common-law duty of good faith and fair dealing.

74.     The Insurers' wrongful misconduct, as set forth above, breached the Insurers' common-law duty of good faith and fair dealing to the extent the Insurers' wrongful and unreasonable conduct is not exclusively actionable under Montana's Unfair Trade Practices Act.

75.     Galilea, LLC and Chris Kittler have suffered and will suffer damages in excess of $1 as a result of the Insurers' breaches of their common-law duty of good faith and fair dealing.

76.     The Insurers' breach of their common-law duty of good faith and fair dealing warrants an award of punitive damages against the Insurers. The Insurers had knowledge of facts, or intentionally disregarded facts, that created a high probability of injury to Galilea, LLC and Chris Kittler, and have deliberately acted with indifference to, or in conscious or intentional disregard of, the high probability of injury to Galilea, LLC and Chris Kittler.

## COUNT VII
### (Breach of Fiduciary Duty Against All Insurers)

77.     Galilea, LLC and Chris Kittler incorporate and reassert the statements and allegations in all preceding paragraphs as if fully set forth herein.

78.     The Insurers owed Galilea, LLC and Chris Kittler a common-law fiduciary duty arising out of their relationship with Galilea LLC and Chris Kittler.

79.   The Insurers' misconduct described above breached that common-law fiduciary duty and is actionable to the extent it is not exclusively actionable under Montana's Unfair Trade Practices Act.

80.   Galilea, LLC and Chris Kittler have suffered and will suffer damages in excess of $1,566,500 as a result of the Insurers' breaches of their common-law fiduciary duty.

81.   The Insurers' breach of their common-law breach of fiduciary duty warrants an award of punitive damages against the Insurers. The Insurers had knowledge of facts, or intentionally disregarded facts, that created a high probability of injury to Galilea, LLC and Chris Kittler, and have deliberately acted with indifference to, or in conscious or intentional disregard of, the high probability of injury to Galilea, LLC and Chris Kittler.

## COUNT VIII
### (Violation of Montana Unfair Trade Practices Act Against All Insurers)

81.   Galilea, LLC and Chris Kittler incorporate and reassert the statements and allegations in all preceding paragraphs as if fully set forth herein.

82.   The Insurers have engaged in misconduct that violates Montana's Unfair Trade Practices Act. Such conduct includes, but is not limited to, the following:

a.   The Insurers have misrepresented pertinent facts regarding their knowledge of the location of Galilea at the time they promised to insure the Galilea, and insurance policy provisions relating to coverages at issue;

b.   Upon information and belief, the Insurers have refused to pay Galilea, LLC's claim without conducting a reasonable investigation based upon all available

information, as evidenced by the Insurers' denial of coverage for the loss of the Galilea

within hours of receiving notice of the accident and claim;

      c.    The Insurers have failed to attempt in good faith to effectuate prompt, fair,

and equitable settlement of Galilea, LLC's and Chris Kittler's insurance claim in which

liability has become reasonably clear.

83.    Galilea, LLC and Chris Kittler have suffered and will suffer damages in excess of

$1,566,500 because of the Insurers' violations of Montana's Unfair Trade Practices Act, and

Galilea, LLC and Chris Kittler seek all damages allowed by the Act.

84.    The Insurers' violations of Montana's Unfair Trade Practices Act warrant an award

of punitive damages against the Insurers. The Insurers had knowledge of facts, or intentionally

disregarded facts, that created a high probability of injury to Galilea, LLC and Chris Kittler, and

have deliberately acted with indifference to, or in conscious or intentional disregard of, the high

probability of injury to Galilea, LLC and Chris Kittler.

## COUNT IX
### (Negligent Misrepresentation Against All Insurers)

85.    Galilea, LLC and Chris Kittler incorporate and reassert the statements and

allegations in all preceding paragraphs as if fully set forth herein.

86.    The Insurers represented that as of May 12, 2015, the Galilea was insured and

covered. These representations included but were not limited to the Insurers' written

representations to the Kittlers on May 13, 2015 that Galilea was insured effective May 12, 2015,

and that Galilea, LLC and Chris Kittler had insurance coverage for the Galilea.

87.    The Insurers now maintain that this representation was untrue, and contend that the

Galilea was not covered as of May 12, 2015 because of its then-current location, which the

Insurers knew or should have known before they represented that the Galilea was insured and covered.

88.    If the Insurers' position that there is no coverage for the Galilea under the parties' contract is correct, the Insurers made the representation that the Galilea was insured and covered effective May 12, 2015 without reasonable basis.

89.    The Insurers' representations that Galilea was insured and covered as of May 12, 2015 were made with the intent to induce Galilea, LLC and Chris Kittler to rely on the representations and so that the Insurers could obtain insurance premiums from Galilea, LLC.

90.    Galilea, LLC and Chris Kittler were unaware that the Insurers' representations of coverage were untrue. Galilea, LLC and Chris Kittler justifiably relied on said representations and did so to their extraordinary detriment, as Galilea LLC paid for insurance coverage intending and expecting to have immediate coverage for the Galilea while it continued its planned voyage.

91.    To the extent that the parties' contract does not provide coverage for the subject occurrence and loss, including by operation of the Navigational Limits provision in the policy form document, the Insurers' representations to Galilea, LLC and Chris Kittler were careless and incorrect, and constitute actionable misrepresentations.

92.    As a result of such misrepresentations, Galilea, LLC and Chris Kittler have suffered and will suffer damages in excess of $1,566,500.

## COUNT X
### (Constructive Fraud Against All Insurers)

93.    Galilea, LLC and Chris Kittler incorporate and reassert the statements and allegations in all preceding paragraphs as if fully set forth herein.

94.     As Galilea, LLC's and Chris Kittler's insurers, the Insurers stood in a special relationship to Galilea, LLC and Chris Kittler, including a fiduciary relationship. That special relationship obliged the Insurers to be truthful in their representations to Galilea, LLC and Chris Kittler.

95.     The insurers breached their obligations through the communications and representations described above.

96.     Because of the Insurers' breach of their obligations, the Insurers misled Galilea, LLC and Chris Kittler and gained an advantage to the prejudice of Galilea, LLC and Chris Kittler.

97.     Galilea, LLC and Chris Kittler have suffered and will suffer damages in excess of $1,566,500 as a direct and proximate result of the Insurers' constructive fraud.

98.     The Insurers' constructive fraud warrants an award of punitive damages against the Insurers. The Insurers had knowledge of facts, or intentionally disregarded facts, that created a high probability of injury to Galilea, LLC and Chris Kittler, and have deliberately acted with indifference to, or in conscious or intentional disregard of, the high probability of injury to Galilea, LLC and Chris Kittler.

## COUNT Xl
## (Tortious Interference With Contract Against All Insurers)

99.     Galilea, LLC and Chris Kittler incorporate and reassert the statements and allegations in all preceding paragraphs as if fully set forth herein.

100.    Following the accident, Galilea, LLC made arrangements for salvage of the Galilea with Triton Salvage Company.

101.   Triton agreed to salvage the Galilea, and Galilea, LLC agreed that Triton would be paid for its salvage services.

102.   But on or about June 24, 2015, the Insurers unlawfully, wrongfully, and without justification interfered with the salvage efforts by communicating with Triton Salvage Company and causing and inducing Triton to stop its salvage efforts.

103.   Triton ultimately refused to perform and salvage the Galilea.

104.   As a result of the Insurers' tortious interference, the Insurers caused further damage to Galilea, LLC and Chris Kittler, including but not limited to the eventual looting of the Galilea and its equipment, property, and contents.

## COUNT XII
## (Tortious Interference With Prospective Economic Advantage Against All Insurers)

105.   Galilea, LLC and Chris Kittler incorporate and reassert the statements and allegations in all preceding paragraphs as if fully set forth herein.

106.   Following the accident, Galilea, LLC and Chris Kittler made arrangements for salvage of the Galilea with Triton Salvage Company.

107.   But on or about June 24, 2015, the Insurers unlawfully, wrongfully, and without justification interfered with the anticipated, prospective salvage efforts by communicating with Triton Salvage Company and causing and inducing Triton to stop its salvage efforts.

108.   Triton ultimately refused to perform and salvage the Galilea.

109.   As a result of the Insurers' tortious interference, the Insurers caused further damage to Galilea, LLC and Chris Kittler, including but not limited to the eventual looting of the Galilea and its equipment, property, and contents.

## PRAYER FOR RELIEF

WHEREFORE, Galilea, LLC and Chris Kittler requests relief against the Insurers as follows:

(l) Declaratory judgment, declaring the parties' rights and responsibilities under their

contract or otherwise;

(2)    All damages allowed by law, including compensatory damages and consequential

damages flowing from the Insurers' breach of their duties as set forth above;

(3)    All damages allowed by law, including exemplary and punitive damages to the

maximum extent allowed by law;

(4)    All attorneys' fees, costs, and expenses incurred by Galilea, LLC and Chris Kittler

in connection with this matter;

(5)    All interest on the above-described amounts allowed by law; and

(6)    Such other and further relief as deemed just, appropriate, necessary or proper.

DATED: April 23, 2018


By: /s/ Joseph J. Gleason
    Joseph J. Gleason
    *Attorney for Galilea, LLC*
    *and Chris Kittler*